# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

TWEET/GAROT-AUGUST WINTER, LLC.,

               Plaintiff,

      vs.

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

               Defendant.

Civil Action No. 06-C-800

---

## LIBERTY MUTUAL'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO BIFURCATE AND STAY

---

## INTRODUCTION

The arguments of Tweet/Garot-August Winter, LLC ("Tweet/Garot") opposing bifurcation of the determination of coverage from the factual issues underlying the application of estoppel and Tweet/Garot's bad faith claim rest on three faulty premises.

Most fundamentally, Tweet/Garot's contention that "the facts showing . . . estoppel overlap with those showing bad faith" (Tweet/Garot's Response Brief at 1), ignores the fact that the threshold determination of coverage presents a question of law that is completely separable from – and may eliminate the need to consider – issues of estoppel and bad faith, as the coverage determination will be governed by the Court's construction of the Liberty Mutual Policy ("the Policy"). Overlap between the secondary factual issues relating to estoppel and bad faith, therefore, does not furnish a reason to deny bifurcation of the coverage determination. If the court determines on summary judgment, as a matter of law, that Tweet/Garot's claim is covered by the Policy, there will be no need to address the issue of estoppel at all. If the Court determines on summary judgment that Tweet/Garot's claim is not covered by the Policy, the

Court can address the next threshold question, which will also be presented in the same summary judgment motion, of whether, as a matter of law, estoppel can be used to create coverage that does not otherwise exist. If the Court determines estoppel is not a viable defense as a matter of law under the circumstances of this case, the need to conduct discovery on the factual issues underlying estoppel (whether Liberty Mutual engaged in acts which induced reasonable and detrimental reliance by Tweet-Garot) will, again, be eliminated. Moreover, if the Court determines there is no coverage under the Policy for Tweet/Garot's claim, the bad faith claim will be rendered moot, as there can be no bad faith if there is no coverage.

Second, Tweet/Garot is wrong on the facts it contends are relevant to its estoppel defense: Liberty Mutual did not "take over Tweet/Garot's interest in litigation pertaining to the underlying liability" (Tweet/Garot Brief at 5), but as Tweet/Garot itself alleges in the complaint, Liberty Mutual hired counsel to represent its own subrogation interest in anticipation that it might pay Tweet/Garot's claim. (See Complaint, ¶¶ 29, 30, 31, 33.) Thus, Tweet/Garot is incorrect when it implies that Liberty Mutual hired and then withdrew counsel to represent Tweet/Garot.

The third faulty premise flows from the second, in that the legal authorities relied upon by Tweet/Garot are inapposite to the actual facts of this case. All three of the cases that Tweet/Garot cites to support its argument actually hold that an insurer can be estopped to contest coverage when it undertakes the **defense** of a suit **against its insured** without reserving its rights. Tweet/Garot cites no case, and Liberty Mutual has found none, that results in a finding of estoppel when an insurer changes its position on a subrogation claim. This is a critical distinction. The insured under a liability policy pays premiums in exchange for two benefits: the right to defense and the right to be indemnified. When an insurer undertakes its insured's

defense of a third party claim without advising the insured that the insurer may challenge its

obligation to indemnify, estoppel properly bars the insurer from asserting coverage defenses

because the insurer might use its control over the defense to steer the case toward a no-coverage

result. Tweet/Garot supplies no reason to conclude that cases with this fact pattern have any

bearing on this case, where there has been no third party claim asserted against Tweet/Garot at

all and, therefore, no implication of any duty to defend.

Thus, Tweet/Garot has failed to provide the court with a precedential basis for

disregarding Wisconsin's general rule forbidding the use of estoppel to expand the scope of

insurance coverage. *See, e.g., Shannon v. Shannon*, 150 Wis. 2d 434, 442 N.W.2d 25 (1989).

Absent such a basis for treating this case differently from any other bad faith case, the well-

recognized distinction between coverage issues and bad faith issues should carry the day here.

Liberty Mutual's motion should be granted.

### ARGUMENT

I. **THE DETERMINATION OF COVERAGE PRESENTS A QUESTION OF LAW SEPARABLE FROM FACTUAL ISSUES RELATING TO ESTOPPEL AND BAD FAITH.**

Tweet/Garot insists the issues of coverage, estoppel and bad faith are intertwined, but

makes no effort to explain the basis of the alleged overlap.[1] In fact, the determination of

coverage presents a question of law that can be made solely on the basis of the terms of the

Policy. *National-Ben Franklin Ins. Co. v. Levernier*, 280 F.Supp.2d 851, 859 (E.D. Wis.

2003)("Both the interpretation of words or clauses in an insurance policy and the determination

of whether coverage exists under that policy are questions of law for the court."). Contrary to

Tweet/Garot's suggestion that it needs to conduct discovery of "the claim file, documents

---

[1] The Court is not required to address undeveloped arguments.

pertaining to how and why the decision on coverage was rescinded, and testimony from the individuals involved in these decisions" (Tweet/Garot Br. at 7), no discovery is required for the coverage determination at all. The sole question is whether the claim Tweet/Garot submitted to Liberty Mutual is covered by the terms of the Policy. Even Tweet/Garot implicitly concedes that the issue on which it seeks discovery from these sources is whether Liberty Mutual can be estopped from denying coverage if there is no coverage, not the question of whether Tweet/Garot's claim is covered under the terms of the Policy in the first instance. (*See,* Tweet/Garot's Br. at 7, ". . . Tweet/Garot has the right to contest that [summary judgment] motion by taking discovery to develop facts showing that Liberty Mutual is estopped from contesting coverage . . .".) One of the primary objectives of bifurcation, however, is to first resolve questions of law that may render other claims moot.

The court decisions Tweet/Garot cites for the proposition that bifurcation is not appropriate where the factual underpinnings of claims overlap are inapposite for the simple reason that there is no factual overlap between the initial determination of coverage under the Policy and Tweet/Garot's estoppel and bad faith claims. Tweet/Garot's opposition confuses the factual issues relating to the application of estoppel and the determination of bad faith with the question of law presented by the initial determination of coverage under the Policy based on undisputed facts.

Tweet/Garot further offers the fact that discovery can be completed in a short period of time as justification for denying bifurcation. (Tweet/Garot Brief at 2.) This disregards the fact, discussed in Liberty Mutual's primary brief, that the scope of discovery conducted on a bad faith claim, regardless of how quickly it is conducted, is much broader than that allowed where there are factual disputes underlying a coverage determination, and the nature of the evidence

4

discovered carries a substantial risk of undue prejudice.  (*See* Liberty Mutual's Primary Brief, Sec. III.C.)

The district court decision in *Progressive Northern Ins. Co. v. Bachmann*, 314 F. Supp. 2d 820 (W.D. Wis. 2004), does not aid Tweet/Garot's case.  In *Bachman*, one of plaintiff's allegations of bad faith related directly to the existence of coverage under the policy.  *Id*. at 833. Here, Tweet/Garot has not made such a showing.  And, the *Bachman* court denied bifurcation only after concluding that disputed material facts entitled the insurer to a trial on the coverage issue of what had caused damage to the insured's boat.  314 F. Supp. 3d at 832.  In contrast, here both sides agree that the issue of whether the third party claims against Tweet/Garot are covered under Liberty Mutual's policy present a question of law.

## II. LIBERTY MUTUAL NEVER UNDERTOOK TO REPRESENT TWEET/GAROT'S INTERESTS IN THE BROWN COUNTY ACTION, UNDERMINING THE FACTUAL AND LEGAL PREMISES OF TWEET/GAROT'S ESTOPPEL DEFENSE.

Tweet/Garot filed the Brown County Action at the same time it gave notice of its claim to Liberty Mutual, seeking to recover from the entities that distributed and sold the defective valves the same warranty repair and replacement expenses for which Tweet/Garot seeks coverage under the Policy.  (Complaint, ¶¶ 15,16.)  As Liberty Mutual considered Tweet/Garot's claim for coverage, it became concerned about protecting its subrogation rights against the entities responsible for the valve defects in the event coverage existed for Tweet/Garot's claim. Accordingly, Liberty Mutual asked its staff counsel to appear on its behalf at the scheduling conference in Brown County action, and a short period of time passed (approximately 23 days), before Liberty Mutual advised Tweet/Garot that its claim was not covered by the Policy.

In this light, it is clear that Liberty Mutual's brief participation through counsel in the Brown County case was not intended to be, and in fact was not, made on behalf of Tweet/Garot.

Instead, operating under its mistaken view that coverage might exist, Liberty Mutual retained counsel "to take over the Brown County Action *on behalf of Liberty*." (Complaint, ¶ 29, emphasis supplied.) That counsel, Keith Kostecke, told Tweet/Garot's attorney that "he would be participating in the scheduling conference . . . on behalf of Liberty," and that he wished to "be introduced to the Court as the new counsel for Liberty." (*Id.*, ¶ 30.) At the scheduling conference, "Kostecke entered an appearance on behalf of Liberty, and introduced himself to the Court and counsel as new counsel for Liberty," and "participated in the scheduling conference on Liberty's behalf." (*Id.* ¶ 31.)

Based on these facts, **which are taken directly from Tweet/Garot's own complaint**, it is clear that Liberty Mutual hired Mr. Kostecke to pursue the subrogation interest that Liberty Mutual would have acquired if paid Tweet/Garot's claim, and **not** to represent Tweet/Garot itself in any way. The difference is significant. Had Liberty Mutual paid the claim, it would have been pursuing its own interest, not "taking over Tweet/Garot's interest" (see Tweet/Garot Brief at 5). As it turned out, those interests never arose, so Mr. Kostecke did not proceed to substitute Liberty Mutual as the plaintiff in the action against the valve suppliers. Tweet/Garot itself pleads that Mr. Kostecke appeared in the suit for Liberty Mutual; it never asserts that he was to substitute in as counsel for Tweet/Garot. Quarles & Brady was and remains the only firm to represent Tweet/Garot in the Brown County suit.

Although there really isn't any basis to conclude that Liberty Mutual hired counsel for Tweet/Garot or "took over" its claim, it likely would not matter if those were indeed the facts at bar. Tweet/Garot argues that bifurcation is inappropriate because in this case, the conduct that is at issue in the bad faith claim "overlaps" with the factual basis for the estoppel argument. (Tweet/Garot Brief at 5.) It proceeds to argue that three federal appellate decisions establish that

6

an insurer may be "estopped from later denying coverage when it appeared in underlying litigation without [a] reservation of rights." (Tweet/Garot Brief at 5-6.) There is a reason why Tweet/Garot paraphrases and does not quote any of those decisions. Only by characterizing the cases at such a high level of abstraction can Tweet/Garot present **any** case law to support the existence of its estoppel claim. Similarly, there is a reason why Tweet/Garot does not provide "pin-point" citations to the specific relevant pages of the cases. There is nothing in the opinions to which Tweet/Garot can point for support.

We hesitate to get too far into the merits at this early stage of the case, but Tweet/Garot has interposed the legal basis for its estoppel claims as a reason for denying Liberty Mutual's motion to bifurcate and stay, so practically we must address the substance of Tweet/Garot's argument. There isn't much. Each of the cases that Tweet/Garot cites – *City of Carter Lake v. Aetna Cas. & Surety Co*. 604 F.2d 1052 (8th Cir. 1979), *Pacific Indemnity Co. v. Acel Delivery Service, Inc*., 485 F.2d 1169 (5th Cir. 1973), and *Fidelity & Cas. Co. of New York v. Riley*, 380 F.2d 153 (5th Cir. 1967), applies the general rule that an insurer who assumes the **defense** of its insured under a liability policy may be estopped from contesting coverage if it fails to inform the insured that it is reserving the right to do so.

Specifically, in *Carter Lake* the insurer was estopped from contesting coverage because it provided a defense to its insured for six months before advising the insured that it was reserving its right to deny coverage. 604 F.2d at 1060-61. In *Acel Delivery*, the situation was even more extreme:  there, the insurer extended a defense to its insured for **1½ years** before issuing a reservation of rights letter, and withdrew the defense only a month before trial. 485 F.2d at 1176. Finally in *Riley*, the insurer defended for nine months before withdrawing the defense and advising the insured that it had concluded that no coverage existed. 380 F.2d at 155. In **none** of

7

the cases did the court confront a fact pattern that is analogous, let alone identical, to the facts of this case.

This distinction based on the facts becomes meaningful in light of the rationale for the "estoppel-by-defense" rule. Both the *Carter Lake* court and the *Acel Delivery* court noted that allowing an insurer to assume and control its insured's defense has a grave potential for creating a conflict of interest highly prejudicial to the insured: such a conflict "might arise when the insurer represents the insured in a lawsuit against the insured and simultaneously formulates its defense against the insured for noncoverage." *Acel Delivery*, 485 F.2d at 1173. See also *Carter Lake*, 604 F.2d at 1062 ("During the time that Aetna had control of the city's defense against the [plaintiffs'] claims, its attorneys could have simultaneously prepared a defense for Aetna against the city on policy coverage").[2] Tweet/Garot provides no reason to conclude that, even if it had ever surrendered control of its *affirmative* claims against the valve suppliers to Liberty Mutual, that loss of control should be treated as equivalent to the intrinsic harm done to an insured whose defense is tainted by a conflict of interest. The insured whose right to a defense is jeopardized by an insurer who takes up that defense without notifying the insured that it reserves the right to dispute coverage is in a much more vulnerable position that an insured that has brought its own affirmative claim. Indeed, under Wisconsin law an insurer is not obligated to prosecute affirmative claims on behalf of its insured. *See Towne Realty, Inc. v. Zurich Ins. Co.*, 201 Wis. 2d 260, 272, 548 N.W.2d 64 (1996).

Finally, the decisions in *Carter Lake* and *Acel Delivery* acknowledge that the estoppel-by-defense principle is in fact an **exception** to the general rule that estoppel "will not operate to create coverage in an insurance policy where none originally existed. The reason underlying this

---

[2] The *Riley* court did not address the underlying justification for the rule.

rule is that the insurer should not be held liable for a risk which goes beyond the contractual agreement and for which no premium was collected." *Acel Delivery*, 488 F.2d at 1173; *see also Carter Lake*, 604 F.2d at 1059 ("general rule" is that estoppel may not be used "to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom"). Wisconsin follows this general rule. " '[E]stoppel has not been used in this state or in the majority of states as a means whereby the scope of coverage of an insurance policy can be expanded to include coverage which was not provided for or was excluded in the contract . . . .' " *Shannon* , 150 Wis. 2d at 451, *quoting Annapee & Western Ry. Co. v. Chakoner*, 34 Wis. 2d 134, 140, 148 N.W.2d 646 (1967). *See also Sugden v. Bock*, 2002 WI App. 49, ¶ 15, 251 Wis. 2d 344, 641 N.W.2d 693; *Budget Rent-A-Car Systems, Inc. v. Shelby Ins. Group*, 197 Wis. 2d 663, 611, 541 N.W.2d 178 (Ct. App. 1995).

We reiterate that this is not the place to resolve the merits of Tweet/Garot's claims. The fact is, however, that Tweet/Garot's contention that bifurcation is inappropriate because there exists a "legitimate overlap" in the facts that constitute a basis for both coverage and bad faith claims" (Tweet/Garot Brief at 6) depends entirely on the accuracy of its assertion that it has a legally-sound basis for asserting the estoppel argument. At least thus far, the law that Tweet/Garot cites does not support its assertion that an "overlap" exists. On the other hand, Liberty Mutual's argument in favor of bifurcation is strengthened by its reliance on the general rule that estoppel cannot create insurance coverage that would not exist under the policy's terms, conditions and exclusions. By October 2, Liberty Mutual will have filed its summary judgment motion asking the Court to dismiss the estoppel claim on precisely that basis. If Liberty Mutual is right (and it is right on the merits of its coverage defenses), the case will be over. If it is wrong, Tweet/Garot will have ample opportunity to present its case. In the absence of any

MILWAUKEE\1283144.1

reason to believe the "overlap" between coverage and bad faith posited by Tweet/Garot actually

exists, there is no sound basis for denying Liberty Mutual's motion.

## CONCLUSION

For the reasons stated in this brief and in Liberty Mutual's initial brief, this Court should

grant Liberty Mutual's motion for bifurcation and stay.

Dated this 12th day of September, 2006.

WHYTE HIRSCHBOECK DUDEK S.C.
Attorneys for Defendant Liberty Mutual Fire
Insurance Company, improperly designated as
Liberty Mutual Group


By: /s Tamara Hayes O'Brien_____

WHYTE HIRSCHBOECK DUDEK S.C.

Jay R. Starrett
Tamara Hayes O'Brien
Mark Leitner

P.O. ADDRESS:
555 East Wells Street
Suite 1900
Milwaukee, WI 53202
414-273-2100

Direct inquires to:  Tamara Hayes O'Brien

10